UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :

    - v. -                          :   S2 07 Cr. 872 (RPP)

JOSEPH DEACON,                      :
   a/k/a "Valentino,"
   a/k/a "Henry Deacon,"            :
   a/k/a "Deval Delore,"
CHARLES WATTS,                      :

        Defendants.             :

- - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
IN OPPOSITION TO THE MOTION OF JOSEPH DEACON
<u>TO SUPPRESS AUDIO RECORDINGS AND TO SEVER COUNTS</u>**


                                  MICHAEL J. GARCIA
                                  United States Attorney for the
                                  Southern District of New York
                                  One Saint Andrew's Plaza
                                  New York, New York 10007


Antonia M. Apps
Assistant United States Attorney
    -Of Counsel-

**PRELIMINARY STATEMENT**

The Government respectfully submits this opposition to the motion of defendant Joseph Deacon (referred to herein as "Deacon") (1) to suppress various audio recordings of the drug transactions charged in Count Five of the Indictment or to hold a hearing on their audibility; and (2) to sever Counts One, Two, Three, and Four from Count Five pursuant to Rules 8(a) and 14(a) of the Federal Rules of Criminal Procedure. See Memorandum of Law in Support of Motion To Suppress Audio Recordings and To Sever Counts One, Two, Three, and Four from Count Five in the Indictment Pursuant to Fed. R. Crim. P. 8(a), 8(b) and 14(a) (filed Jan. 3, 2008) ("Def's Mem." ).

The defendant's motion to suppress the audio recordings on audibility grounds should be denied because the defendant has failed to identify any portions of the recordings that are so inaudible as to render the entire recordings more misleading than probative. See Point I infra. The defendant's motion to sever counts should also be denied because the counts are factually similar and the evidence in support of is interconnected, and because the defendant cannot demonstrate "substantial prejudice" from proceeding on both sets of crimes in one trial. See Point II infra.

## BACKGROUND

A. <u>Procedural Background</u>

The defendant was charged in a Complaint, dated August 9, 2007, with dealing in firearms without a license in violation of Title 18, United States Code, Sections 922(a)(1)(A) and 2, and possessing a firearm after having been convicted of a felony in violation of Title 18, United States Code, Section 922(g)(1). <u>See</u> Complaint, 07 Mag. 1307 ("Cmplt.") (Exhibit A hereto). The defendant was arrested on August 16, 2007, and presented and arraigned on the Complaint before Magistrate Judge Andrew J. Peck on August 17, 2007.

An initial indictment was returned on September 13, 2007, charging the defendant in four counts. Count One charged Deacon with conspiracy to deal in firearms without a license in violation of Title 18, United States Code, Section 371. Count Two charged Deacon with dealing in firearms without a license in violation of Title 18, United States Code, Section 922(a)(1)(A). Count Three charged Deacon with possessing a weapon after having been convicted of a felony in violation of Title 18, United States Code, Section 922(g)(1). Count Four charged Deacon with distributing over 50 grams of crack cocaine and over 50 grams of heroin in violation of Title 21, United States Code, Sections 812, 841(a)(1), and 841(b)(1)(A). The indictment also contained forfeiture allegations. The defendant, who was in custody, was

arraigned on this indictment on September 18, 2007 before this Court.

On October 26, 2007, the Grand Jury returned a second superseding indictment (the "Indictment") which charged Deacon in the same four counts as in the original indictment. However, this Indictment added defendant Charles Watts to the conspiracy charged in Count One, and added a separate substantive count (in Count Three)[1] against Charles Watts alone, namely, dealing in firearms without a license in violation of Title 18, United States Code, Section 922(a)(1)(A).[2]  Deacon was arraigned on the Indictment on December 3, 2007.

The Government produced discovery to the defendants on October 2, 2007, October 10, 2007, and November 6, 2007.  Deacon filed the present motion on January 3, 2008.[3]

---

[1] As a result of the addition of Count Three against Watts, Counts Three and Four in the initial indictment were renumbered as Counts Four and Five in the superseding indictment.  Thus, the felon-in-possession count against Deacon is now Count Four; and the drug charge against Deacon is now Count Five.

[2] The second superseding indictment is identical in all respects to the first superseding indictment, which was returned on October 22, 2007, except for a single date change in Count Three.  The first-mentioned date in Count Three in the first superseding indictment was "September 8, 2007."  This was changed to "September 8, 2006" in the second superseding indictment.

[3] Watts has indicated that he intends to plead guilty, and has not filed any motions.

3

A.  Offense Conduct

On four separate occasions between April 17, 2007 and July 17, 2007, Deacon sold 14 firearms to undercover agents and confidential informants in New York, New York, as follows:

- On April 17, 2007, Deacon sold five firearms to a confidential informant (referred to herein as "CI-1") outside the front of the building located at 14 West 119th Street, New York, New York.  See Indictment ¶3(d); Cmplt. ¶5.

- On May 1, 2007, Deacon sold four firearms to CI-1 inside the building located at 14 West 119th Street.  See Indictment ¶3(f); Cmplt. ¶8.

- On July 5, 2007, Deacon sold three firearms to a different individual working for the New York City Police Department (referred to herein "CI-2") outside the front of 79 West 119th Street. Indictment ¶3(I).

- On July 17, 2007, Deacon sold two firearms to CI-2 outside the front of 79 West 119th Street.

These firearms' transactions were observed by undercover law enforcement agents.  The firearms themselves were originally purchased by straw purchasers in South Carolina, and were transported to New York, New York by Charles Watts, who resides in the building located at 14 West 119th Street.

Deacon, a convicted felon, is not a licensed importer, manufacturer, or dealer of firearms.  Indictment ¶ 2, 4, & 5; Cmplt. ¶ 12, 13.

On August 12, 13, and 14, 2007, Deacon sold over 50 grams of crack cocaine and over 50 grams of heroin to CI-1 – the same confidential informant who purchased the firearms from

4

Deacon on April 17 and May 1, 2007. Specifically, on August 12, 2007, Deacon gave CI-1 five bundles of heroin worth a total of $500, with the understanding that CI-1 would pay Deacon for the heroin the next day.

On August 13, 2007, at about 2:40 p.m., CI-1 contacted Deacon by telephone and arranged to meet Deacon in person. Later that day, at about 4:25 p.m., CI-1 met Deacon in person and paid Deacon $1,500 ($500 of this total amount was for the heroin CI-1 received the day before; and the additional $1,000 was for ten more bundles of heroin). During that meeting, Deacon also gave CI-1 five additional bundles of heroin on consignment. Accordingly, at the end of this meeting, CI-1 owed Deacon a further $500. Also during this meeting, Deacon told CI-1 that he could sell crack cocaine to CI-1. This meeting was also consensual recorded.

After this in-person meeting on August 13, 2007, CI-1 told Deacon that he wanted to buy 60 grams of crack cocaine, and arranged to purchase the crack cocaine from Deacon the next day, on August 14, 2007.

On August 14, 2007, at approximately 12.30 p.m., undercover federal agents monitored the meeting between CI-1 and Deacon in the vicinity of 168 Lennox Avenue, New York, New York.[4]

---

[4] 168 Lennox Avenue is on Lennox Avenue between 118th and 119th Streets. As noted above, the gun transactions took place outside and inside the building located at 44 West 119th Street,

CI-1 consented to wearing a wire to this meeting with Deacon. CI-1 went into the building with $2,300 ($500 for the additional heroin received on August 13, 2007, and $1,800 for the 60 grams of crack cocaine CI-1 had arranged to purchase from Deacon). CI-1 came out of the building approximately two and a half hours later with the 60 grams of crack cocaine and yet another five bundles of heroin that Deacon gave to CI-1 on consignment.

    C.    The Audio Recordings

On November 6, 2007, the Government produced three CDs with recordings relating to Deacon's drug transactions, with bates stamps 00060-62. See Decl. of Aubrey Lees, Exh. B (filed Jan. 3, 2008). Only two of these CDs are alleged by the defendant to have inaudibility problems, namely the CDs with bates numbers 00060 and 00062.

The CD with bates number 00060 is the entire recording of the wire that CI-1 wore when he met with Deacon on August 13, 2007, to buy heroin. The audio recording is 1:48 hours long because the wire was placed on CI-1 by the undercover agent some time before CI-1 was scheduled to meet with Deacon. Thus, the recording begins with the conversations between CI-1 and the undercover agent who were together for some time while waiting for Deacon to contact them, before CI-1 went into a building to

---

which is between Fifth Avenue and Lennox Avenue on 119th Street. Thus, the two locations are only a few blocks apart.

meet with Deacon. These conversations are interrupted by brief telephone calls from Deacon asking CI-1 where he was (so as to arrange to meet with him). Also on the tape, since the wire was a continuous recording of the events, are sounds of CI-1 walking to the location and going inside a building and walking up steps. However, the CD then records the conversation between CI-1 and Deacon during which Deacon sold heroin to CI-1. While Deacon's voice is, not surprisingly, not as loud as that of the CI-1, it is nonetheless audible.

Similarly, the CD with bates stamp 00062 is the recording of the consensual wire worn by CI-1 the day CI-1 purchased the crack cocaine from Deacon, namely on August 14, 2007. Thus, the recording is 2:36 hours long. Like the recording of the August 13, 2007 heroin buy, the undercover agent placed the wire on the CI-1 before the pre-arranged meeting with Deacon, and accordingly the CD records conversations other than the conversations between CI-1 and Deacon regarding the drugs.

The Government has separately recorded a four and half minute segment of the CD bates stamped 00060 (which was the recording of the consensual wire placed on CI-1 on August 13, 2006), and is producing this segment on a separate disk to counsel and the Court with this motion, so that the Court can listen to a shorter segment. See Exhibit B (00063). This segment records the meeting between CI-1 and Deacon in which they

7

discuss selling "60/65 grams" of crack cocaine. The Government intends to play this segment at trial, along with other segments which record Deacon's statements, and which the Government will identify prior to trial. As customary, the Government will mark as exhibits the CDs with bates numbers 00060, 00061, and 00062, but will only play those segments that contain the relevant statements of Deacon with CI-1.

The CD with bates stamp 00061 is less than two minutes long. It contains an approximately 30 second telephone conversation between CI-1 and Deacon on August 13, 2007, in which CI-1 tells Deacon he is "done" (referring to selling the heroin that Deacon had given to CI-1), and arranges to meet him. This conversation is perfectly audible, as defense counsel concedes, and, accordingly, there is not basis for its suppression.

Defense counsel objects to the remaining approximately one minute of the recording on 00061, which consists of the voice of the undercover agent stating the time and date of the telephone call, stating whose voices are on the recorded telephone conversations, and explaining the context, namely that Deacon had sold CI-1 heroin the day before. <u>See</u> Def's Mem. at 6-7. However, the Government intends to call the undercover officer as a witness, and accordingly does not currently intend to play this portion of the CD to the jury, although the entire recording will be marked as an exhibit.

**ARGUMENT**

I.  **THE DEFENDANT'S MOTION TO SUPPRESS THE AUDIO RECORDINGS OF HIS DRUG DEALS SHOULD BE DENIED**

   A.  <u>Legal Standard</u>

The Second Circuit has expressed its "clear preference for the admission of recordings notwithstanding some ambiguity or inaudibility." <u>United States</u> v. <u>Arango-Correa</u>, 851 F.2d 54, 58 (2d Cir 1988) (citing <u>United States</u> v. <u>Bryant</u>, 480 F.2d 785, 790 (2d Cir. 1973)). Indeed, "[t]he mere fact that some portions of a tape recording are inaudible does not by itself require exclusion of the tape." <u>Arango-Correa</u>, 851 F.2d at 58; <u>see</u> <u>also</u> <u>Bryant</u>, 480 F.2d at 790 (finding tapes admissible even though "some parts of the tape were totally inaudible" and "[o]ther parts were so garbled that only some jurors were able to understand what was being said"). As one court has explained, to exclude a recording simply because portions of it are inaudible or incomplete, without a positive showing of deception, "is no more valid" than to exclude the testimony of a witness because of his or her "failure to overhear all of a conversation." <u>Monroe</u> v. <u>United States</u>, 234 F.2d 49, 54-55 (D.C. Cir. 1956) (cited with approval in 1 Weinstein's Evidence ¶ 106[01], at 106-12 (1986)).

   Thus, a recording is admissible unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy. <u>See</u> <u>Arango-Correa</u>, 851 F.2d at 58 (citing <u>Bryant</u>, 480 F.2d at 790 (internal citation

9

omitted)). In deciding whether a tape recording should be admitted, a court must "focus[] on the probative nature of the tapes, and not merely their audibility." Arrango-Correa 851 F.2d at 58-59; see also Bryant, 480 F.2d at 790 ("Nor can we say that the inaudible parts are so substantial as to render the remainder more misleading than probative"); United States v. Botero, No. 93 Cr. 274 (JFK), 1993 WL 427027, at *2 (S.D.N.Y. Oct. 18, 1993) ("If the Court concludes that the probative value of [a recording] outweighs its potential to mislead, the fact that portions of it are inaudible or unintelligible goes to 'weight, not . . . admissibility.'" (citation omitted)).

Moreover, any objection to the audibility of an audio recording must be specific. See United States v. Siddiqi, No. 06 Cr. 377 (SWK), 2007 WL 2873924, *3 (S.D.N.Y. Oct. 3, 2007)(defendant must "specifically identity portions" of the recording that are unintelligible, and "explain why the unintelligible portions of the [r]ecording, as identified by the defendant, are so substantial as to render the [r]ecording as a whole untrustworthy").

    B.    The Defendant Has Failed to Meet His Burden Of Establishing That The Recordings Are So Unintelligible As To Render Them Untrustworthy

Contrary to the defendant's vague and non-specific allegation that the two CDs bates stamped 00060 and 00062 are inaudible, these two CDs are substantially audible, and their

admissibility will not mislead the jury. It is undisputed that the conversations in which Deacon is discussing the narcotics transactions with CI-1 are directly relevant to, and therefore probative of, the narcotics charges in Count Five. While it is true that the CDs have portions where there is no voice recording, rather only background noise, they have portions where it is only the undercover agent and confidential informant talking when Deacon is not present, and they have portions that are difficult to hear, they are nonetheless sufficiently clear that the entire CDs should nonetheless be admitted at trial. See Arrango-Correa, 851 F.2d at 54 (admission of tapes proper where they were "sufficiently clear that the jury could 'come to some conclusion as to what was going on'" during the recorded meeting) (internal citation omitted).

## II.  THE DEFENDANT'S MOTION TO SEVER COUNTS ONE THROUGH FOUR FROM COUNT FIVE SHOULD BE DENIED

### A.  Count Five Was Properly Joined Under Rule 8(a)

The defendant argues that he is charged with two distinct offenses: gun trafficking with Watts in Counts One Through Four and crack cocaine distribution in Count Five. Def's Mem. at 8.[5] The defendant contends that the offenses are not the

---

[5] In fact, only Counts One, Two, and Three involved gun trafficking: Count One is the conspiracy charge against Deacon and Watts; Counts Two and Three are the substantive charges against Deacon and Watts respectively. Count Four is a felon-in-possession charge against Deacon, although it is based on guns that are the subject of the gun trafficking charges in Counts

11

same or of similar character, based on the same acts or transactions, or part of a common scheme of plan, and, therefore, they were improperly joined under Rules 8(a) and (b) of the Federal Rules of Criminal Procedure. Id.

As an initial matter, the appropriate rule for considering joinder of the various counts is Rule 8(a) – not Rule 8(b) – of the Federal Rules of Criminal Procedure. Rule 8(a) addresses "Joinder of Offenses," while Rule 8(b) addresses "Joinder of Defendants." Courts have held that, even in multi-defendant cases, where a defendant seeks severance of counts in which he is the only defendant charged, the Rule 8(a) standards are to apply. See United States v. Clemente, 494 F. Supp. 1310 (S.D.N.Y. 1980), aff'd on other grounds sub nom. Fiumara v. United States, 727 F.2d 209 (2d Cir.); cf. United States v. Biaggi, 909 F.2d 662, 675-76 (2d Cir. 1990) (acknowledging the "thoughtful opinion" of the district court, which applied Rule 8(a) to severance of counts in a multi-defendant case, and noting that United States v. Turoff, 853 F.2d 1037 (2d Cir. 1988) could be read to the support the contrary proposition, but holding that joinder was proper under both subsections of Rule 8); United States v. Shellef, 507 F.3d 82, 97 n.12 (2d Cir. 2007) (finding that the question of whether Rule 8(a) should apply to sever offenses in a multi-defendant case was an open question).

---

One, Two, and Three.

12

Deacon does not seek to sever Watts, or only the Counts involving Watts; rather, Deacon seeks to sever a single count (the drug count) that is charged against only him. Moreover, since Watts has informed the Government that he intends to enter a guilty plea in this case, the Court should apply the standard in Rule 8(a) to Deacon's claim of improper joinder.

Pursuant to Rule 8(a), an indictment may charge a defendant in separate counts with two or more offenses that are "of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). The Second Circuit has held that, "[f]or purposes of analysis under Rule 8(a), no one characteristic is always sufficient to establish 'similarity' of offenses, . . . and each case depends largely on its own facts." United States v. Blakney, 941 F.2d 114, 116 (2d Cir. 1991) (internal citations and quotations omitted). "The policy behind Rule 8(a) is that considerations of economy and speed may outweigh possible unfairness to the defendant and justify joinder of charges at trial." United States v. Smith, 05 Cr. 922 (DLC), 2007 WL 980431 (S.D.N.Y. Apr. 3, 2007) (citing United States v. Amato, 15 F.3d 239, 237 (2d Cir. 1994)) (holding joinder of drug crimes and crimes of violence between 1998 and 2002 with separate 2005 drug conspiracy crime was proper); see also United States v. Stokes, 211 F.3d 1039, 1042 (7th Cir. 2000)

(noting that courts "have a strong interest in favor of joinder of offenses; in particular, joinder of offenses reduces the waste of precious judicial and prosecutorial time in the already overburdened federal judicial system and reduces the burdens on witnesses from testifying at multiple trials").

In this case, the drug and firearms counts are properly joined because Deacon was selling the guns and drugs to the *same* customer, namely CI-1. See Blakney, 941 F.2d at 116 (holding that joinder of gun trafficking charge and a drug distribution charge was proper where the defendant "was selling [guns and drugs] to the same customers" and the defendant had on one occasion sought to pay for guns by giving the purchaser cocaine). Where, as here, "the evidence in support of [the counts sought to be severed [is] thus interconnected, . . . the interest of judicial efficiency [are] served by having the counts tried together." Additionally, the incidents were also close in time (a few months apart) and close in proximity (within a few blocks of each other). See United States v. Presley, No. 00 Cr. 1790, 2001 WL 1203320 (2d Cir. Apr. 12, 2001)(noting that a "gap in time of six months" between the two incidents charged in the different counts was minimal); Stokes, 211 F.3d at 1042 ("because "weapons are 'tools of the trade' of drug dealers . . . and 'all violations charged in the indictment occurred at the same . . .

14

place, and clearly constituted a 'series of acts'", joinder was proper) (citations omitted).

Even if the Court finds that Rule 8(b) rather than Rule 8(a) should be applied here, the Counts are still properly joined. Joinder is proper under Rule 8(b) where two or more person's criminal acts are "unified by some substantial identity of facts or participants." United States v. Attanasio, 870 F.2d 809 (2d Cir. 1989) (internal quotations and citations omitted). Here, the fact that Deacon sold (some of) the guns and the drugs to the same CI-1 means that there are common participants in the offenses; if Count Five is severed, CI-1 would have to testify at two trials. "[R]easons of economy, convenience and avoidance of delay," counsel against this result. United States v. Feyer, 333 F.3d 110, 114 (2d Cir. 2003) (citing Zafiro v. United States, 506 U.S. 534, 537 (1993)); see also Richardson v. Marsh, 481 U.S. 200, 210 (1987) ("It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying[.]")

    B.    <u>Severance Is Not Warranted Under Rule 14(a)</u>

The defendant moves in the alternative for severance pursuant to Rule 14(a) of the Federal Rules of Criminal

15

Procedure, claiming prejudice on the grounds that (1) the gun offenses are inherently violent in nature, whereas the drug offense is not; (2) the admission of the prior felony conviction required for Count Four (felon-in-possession) is not required for Count Five (drugs); (3) the defendant's right to testify on one offense and not the other will be impacted. Def's Mem. at 10. Because the defendant has not demonstrated the "*substantial prejudice*" required by Rule 14(a), his motion should be denied. United States v. Werner, 620 F.2d 922, 928 (2d Cir. 1980); see also id. at 929 ("Granting separate trials under Rule 14 simply on a showing of some adverse effect, particularly solely the adverse effect of being tried for two crimes rather than one, would reject the balance struck in Rule 8(a), since this type of 'prejudice' will exist in any Rule 8(a) case."); see also Amato, 15 F.3d at 237 ("Given the balance struck by Rule 8, which 'authorizes some prejudice' against the defendant, a defendant who seeks separate trials under Rule 14 carries a heavy burden of showing that joinder will result in 'substantial prejudice.'").

The defendant's argument that the gun charges are inherently a crime of violence which will prejudice the jury on the drug charge is without merit because the gun deals here did not involve violence. Any "implicit" inference of violence simply because there are guns involved can be cured with appropriate jury instructions. See Smith, 2007 WL 980431, at *3

("the Court may presume that the jury is capable of understanding and following limiting instructions . . . with regard to the manner in which it may use evidence) (citing Richardson v. Marsh, 481 U.S. 200, 211 (1987)). In Smith, the court declined to sever counts relating to one drug conspiracy which included murders from counts for a later unrelated drug conspiracy in part because the jury would be appropriately instructed to scrutinize the Government's evidence on each of the Counts and the crimes were sufficiently distinct that there was little danger that the jury would be confused. Id. at *4.

Any prejudice from the admission of Deacon's prior felony for purposes of the felon-in-possession charge in Count Four can likewise be cured by either an appropriate instruction or an appropriately worded stipulation regarding the felony. See Stokes, 211 F.3d at 1043 (rejecting claim of prejudice from admission of prior felony where parties stipulated to the prior felony and where the judge gave instruction that the prior conviction could not be used for any purpose other than for satisfying the element in the felon in possession charge).

Finally, the defendant's "'mere unexplicated assertion" of the desire to testify on only one or a few counts is not enough to require severance." United States v. Douglas, 07 Cr. 68, 2007 WL 2027837 (N.D.N.Y. July 11, 2007) (quoting Werner, 620 F.2d at 930). "[N]o need for severance exists until the

defendant makes a convincing showing that he has both important testimony to give concerning one count and a strong need to refrain from testifying on the other.'" Werner, 620 F.3d at 930 (citation omitted). The defendant has made no such showing here. Nor is it likely there could be one for either the drugs or firearms charges: both the drug and firearms offenses involve plainly illegal commodities, and Deacon was caught selling them directly to undercover agents and confidential informants.

## CONCLUSION

For the foregoing reasons, the defendant's motion to suppress audio recordings on the grounds on inaudibility and to sever Count Five from Counts One through Four should be denied.

Dated: New York, New York
       January 24, 2008

                                Respectfully submitted,

                                MICHAEL J. GARCIA
                                United States Attorney

                        By:     _____
                                Antonia M. Apps
                                Assistant United States Attorney
                                (212) 637-2198

18